IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **DALLAS BUYERS CLUB, LLC** | : | Case No.: 1:14-cv-01142-WTL-MJD |
| Plaintiff, | : | |
| v. | : | |
| **DOES 1-20,** | : | |
| Defendants. | : | |

*In light of Plaintiff's Notice of Dismissal of its claims against Defendant John Doe #10 [Dkt. 18], this motion is **DENIED AS MOOT**.*
*Dated: November 5, 2014*

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

**MOTION TO SEVER DEFENDANT BERMON PRITT, FORMERLY KNOWN AS DEFENDANT JOHN DOE #10**

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, Defendant Bermon Pritt ("Defendant"), formerly known as Defendant John Doe #10, by counsel, respectfully moves this Court for the entry of an order dropping him as a party to this action. There is no reasonable basis to believe that the requirements for Defendant's joinder in this action have been or can ever be satisfied. This Court should grant Defendant's motion and the relief requested herein because "the likelihood that that there is any series of transactions that could link these 20 [Doe Defendants] together in some fashion is 0.0000000000000000000000000000000001% or a 1 in 10 duodecillion chance[,]" and even if the 20 Doe Defendants "did engage in the same series of transactions together, Plaintiff will not be able to demonstrate that this occurred." Decl. Delvan Neville ¶¶ 11, 14 (Oct. 18, 2014).

**I.   LEGAL STANDARD**

Multiple defendants may be joined in a single action if a plaintiff seeks relief: (i) "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and, (ii) "any question of law or fact common to all defendants will arise in the

action." Fed. R. Civ. P. 20(a)(2)(A)-(B).  A court may add or drop a party on terms that are just at any time. Fed. R. Civ. P. 21.  A court may also sever any claim against a party.  Fed. R. Civ. P. 21.

In addition to the requirement that "a right to relief must be asserted by the plaintiff against each defendant relating to or arising out of the same transaction or series of transactions[,]" the Seventh Circuit considers additional factors to determine whether joinder would "comport with the principles of fundamental fairness." *Chavez v. The Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001); *Intercon Research Associates, Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) (quoting *Desert Empore Bank v. Ins. Co. of N. Am.* 623 F.2d 1371, 1375 (9th Cir. 1980)); Fed. R. Civ. P. 20(a)(2)(A). Those factors include a party's motives for seeking joinder; the existence of distinct factual issues and unique defenses; confusion and complication of the issues for the parties; judicial economy and case management; prejudice, and delay and expense. *Chavez,* 251 F.3d at 632; *Intercon,* 696 F.2d at 56.

The United States Court of Appeals for the District of Columbia recently put a stop to joining multiple defendants in BitTorrent cases where a plaintiff "has provided no reason to think that the Doe defendants it named in [the] lawsuit were ever participating in the same swarm at the same time." *AF Holdings, LLC v. Does 1 – 1058,* 752 F.3d 990, 998 (D.C. Cir. 2014).  The Court rejected the argument that the nature of the BitTorrent file-sharing protocol, alone, is sufficient to presume that each "defendant was necessarily part of the same transaction or series of transactions." *Id.* at 998.

Merely downloading the same file does not mean that all defendants were part of the same swarm. *Id.* at 998.  In order to have a good faith belief that multiple defendants are linked in the same way through their participation in the same series of transactions within the meaning

of Rule 20(a)(2), a plaintiff must provide reason to think that two or more individuals "participate[d] in the same swarm *at the same time*[.]" *Id.* at 997-98. "Simply set[ting] forth snapshots of a precise moment in which each of these… Does allegedly shared the copyrighted work" only shows "that they used the same protocol to access the same work." *Id.* at 998.

"[T]wo BitTorrent users who download the same file months apart are like two individuals who play at the same blackjack table at different times.  They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions." *Id.*  "[S]imply committing the same type of violation in the same way does not link defendants together for the purposes of joiner." *Id.* (citing *Hard Drive Productions, Inc. v. Does 1-30,* No. 2:11cv345, at *7 (E.D. Va. 2011)).

The District of Columbia Court of Appeals sided with the majority of district courts that have concluded "that the mere fact that two defendants accessed the same file through BitTorrent provides an insufficient basis for joinder." *Id.* at 998-999 (citing cases).  The decision in *AF Holdings* is correct in all respects, and should persuade this Court that Plaintiff's joinder of Defendant is improper under the facts and circumstances of this case.

II.   FACTS AND APPLICATION

Plaintiff filed its Complaint against Does 1-20 on July 8, 2014, and its Exhibit B to Plaintiff's Complaint on July 14, 2014. CM/ECF 1; 8.  Exhibit B is a chart containing the infohash, IP addresses, "Hit Dates," Internet Service Provider ("ISP") names, cities, and counties for each of the 20 Doe Defendants. CM/ECF 8.

Defendant concedes that at least one question of law or fact common to all Doe Defendants may arise in this action, and does not challenge his joinder on that basis.  However,

Plaintiff has not and cannot show that the relief it seeks against all 20 Doe Defendants is with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; that all 20 Does participated in the same BitTorrent swarm at the same time.  In fact, even if all 20 Does did participate in the same swarm at the same time, Plaintiff cannot show that this occurred.

> **A.    DEFENDANT SHOULD BE DROPPED AS PARTY FROM THIS ACTION BECAUSE: (I) THERE IS A 0.000000000000000000000000000000000001% CHANCE THAT ALL 20 DOE DEFENDANTS ENGAGED IN THE SAME TRANSACTION OR SERIES OF TRANSACTIONS USING THE BITTORRENT PROTOCOL, AND (II) EVEN IF THEY DID, PLAINTIFF WILL NOT BE ABLE TO DEMONSTRATE THAT THIS OCCURRED.**

Delvan Neville ("Mr. Neville") is an expert on matters that relate to BitTorrent investigation and the monitoring of BitTorrent swarms. Decl. Delvan Neville ¶¶ 2, 3.  He is an AccessData Certified Examiner and the owner of the digital forensics company, Amaragh Associates, LLC. Id. ¶ 2.  Mr. Neville is the author / creator of EUPSC2k, a BitTorrent monitoring suite which Mr. Neville has used to investigate companies associated with BitTorrent litigation plaintiffs such as Malibu Media, LLC (IPP International U.G.) and Elf-Man LLC (Crystal Bay Corporation).  Id. ¶ 4.

"From mid-September of 2013 through October 3, 2013, [Mr. Neville] performed BitTorrent monitoring and analysis work for the Electronic Frontier Foundation (EFF)" during which he "monitored 24 swarms associated with IPP International-backed lawsuits, Crystal Bay Corporation (CBC) backed lawsuits, and swarms legally redistributing open-source software." Decl. Delvan Neville ¶ 4.  The features of EUPSC2k, Mr. Neville's BitTorrent monitoring suite, were specifically designed to generate analyzable data for the purpose of characterizing:

> (a)    The average time the typical person ("peer") stays connected to any other peers within the same swarm;

    (b)      The average time the typical peer stays connected within the same swarm as a "leecher" (a downloader, or "a member of a swarm who has not yet finished downloading the contents of a torrent");

    (c)      The average time the typical peer stays connected within the same swarm as a "seeder" (typically an uploader, or "a member of a swarm who has finished downloading the contents of the torrent, but is still connected with members of the swarm, typically in order to continue to share the file(s) with others"); and,

    (d)      The average total number of other peers the typical peer contacts over the course of their time within the swarm. Decl. Delvan Neville ¶¶ 5-8.

Because Mr. Neville monitored and analyzed BitTorrent swarms associated with Crystal Bay Corporation, the company that ostensibly provided Plaintiff with the IP addresses of the 20 Doe Defendants in this case, the nature of his results and the findings of his investigation are directly relevant here.[1] ECF 11-4 at 4, ¶ 19, Decl. Daniel Macek in Support of Plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference (July 31, 2014) ("Crystal Bay Corporation determined that the Doe Defendants identified in Complaint Exhibit B were using the ISPs listed in the exhibit to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture."). Moreover, Mr. Neville's monitoring of Crystal Bay Corporation swarms were "directly inspired by mass-Doe litigation wherein the 'hit dates'[5] would often be days or weeks apart, rather than consisting of Does present in a swarm on the same day," just like the range of Hit Dates listed on Plaintiff's Exhibit B in this case. Decl. Delvan Neville ¶ 10, n. 5; CM/ECF 8.

At the request of Counsel for Defendant, Mr. Neville reviewed Plaintiff's Complaint, Plaintiff's Complaint Exhibit B, and the Declaration of Daniel Macek. Decl. Delvan Neville ¶ 3.

---

[1] Mr. Neville's monitoring of Crystal Bay Corporation and IPP International U.G. swarms indicates that Crystal Bay Corporation, "a company incorporated in South Dakota and organized under the laws of the United States," does not perform monitoring of BitTorrent swarms at all; "CBC's monitoring appears to actually be performed by IPP." ECF 11-4 at 1 ¶ 2; Decl. Delvan Neville ¶ 13 n. 7.

Based upon his analysis of the relevant materials in this case and recent Crystal Bay Corporation "soaks," or continuous periods of time during which EUPSC2k connected to peers in swarms to monitor and record their activity, Mr. Neville concluded as follows:

(a) At the highest variable end of distribution connectivity, "the likelihood that there is any series of peer-to-peer connections that could link all 20 peers together in the same series of transactions is 0.01%. This probability was calculated on the basis that any arrangement of communications that links each peer in this suit to at least one other peer would be sufficient. The probability is even more unlikely if there must be a contiguous series of links connecting all 20 peers through each other." Decl. Delvan Neville ¶ 11, n. 6.

(b) "As the range of 'Hit Dates' in this case range similarly to those from the second soak (weeks, not a single day), the connectivity is almost certainly closer to the 0.05% average seen in the second soak, and thus the likelihood that there is any series of transactions that could link these 20 peers together in some fashion is 0.0000000000000000000000000000000001% or a 1 in 10 duodecillion chance." Id. ¶ 12.

(c) "As every communication between an EUPSC2k node and IPP/CBC demonstrate that they do not support PEX messages, even if the 20 named peers in this case did engage in the same series of transactions together, Plaintiff will not be able to demonstrate that this occurred." Id. ¶ 14.

Mr. Neville's conclusion in paragraph (c), directly above, is of ultimate significance. For the sake of clarification, PEX, or Peer Exchange, is:

[A]n extended BitTorrent protocol whereby, following a handshake message between two peers, the peers will notify each other of the [IP addresses] of all other peers they are

currently connected to within the same swarm, and subsequently update in later messages when any of those peers have disconnected. The purpose of PEX is to allow swarm members to discover each other in addition to the use of one or more trackers and/or Distributed Hash Table (DHT). Id. ¶ 6.

Because Crystal Bay Corporation's BitTorrent monitor does not support the extended protocol necessary to obtain and record such information, Crystal Bay Corporation does not know, let alone record, the IP addresses of any other peers actively connected to, or disconnecting from, other peers within the same swarm. Hence Mr. Neville's conclusion that, "even if the 20 named peers in this case did engage in the same series of transactions together, Plaintiff will not be able to demonstrate that this occurred." Id. ¶ 14.

Put differently, Plaintiff has no evidence whatsoever that any Doe Defendant actively uploaded or downloaded the work at issue to any other Doe Defendant joined in this action. Plaintiff merely possesses snapshots of precise moments in time that each of the 20 Does allegedly uploaded a piece of the work at issue to Crystal Bay Corporation / IPP International U.G. *See AF Holdings,* 752 F.3d at 998 (referring to the "Hit Dates" there as "snapshots"). Thus, Plaintiff's reason for joining Defendant in this action can only be characterized most favorably to Plaintiff as a bad faith guess.

      **B.   ADDITIONAL FACTORS REQUIRE DROPPING DEFENDANT AS A PARTY FROM THIS ACTION.**

Plaintiff's motives for seeking joinder cannot be based on any real intent to litigate a contributory copyright infringement claim against Defendant. Plaintiff's investigator, Crystal Bay Corporation, lacks the technological capability to provide Plaintiff with evidence that would support a claim for contributory infringement against Defendant. Decl. Delvan Neville ¶ 14. In light of the foregoing, Plaintiff's motives for joining all 20 Doe Defendants in a single action must be to obtain larger settlements from each Doe by leveraging an additional claim it has no

proof to support and no intent to litigate; and, to minimize its costs by incurring a $400 filing fee for a single case rather than $8,000 in new case filing fees against each Doe Defendant, individually.

Defendant will encounter significant delay if he is not dropped as a party to this lawsuit. Following Plaintiff's receipt of the ISP subpoena responses, Plaintiff will begin the process of amending its complaint, attempting to serve the Doe Defendants with process, seeking extensions of time to serve the Doe Defendants with process, filing notices of dismissal after obtaining settlements from Doe Defendants, and likely ignoring or postponing Counsel for Defendant's requests to participate in a Rule 26(f) Conference.  At a minimum, Defendant will be forced to wait 5 to 6 months for Plaintiff to wind up this process.  Defendant should not be forced into such an extended period of delay based on a 1 in 10 duodecillion chance that Plaintiff's right to relief against all 20 Does arises from the same transaction or series of transactions, and a 0% chance that Plaintiff can show that Defendant transacted with any other Doe Defendant.

Plaintiff is clearly attempting to manipulate judicial procedures to serve its own improper ends.  *See AF Holdings,* 752 F.3d at 992.  Information about this Defendant who should not be joined in this action "cannot possibly be 'relevant to the subject matter involved in the action.'" *Id.* at 998 (citing Fed. R. Civ. P. 26(b)(1)). Accordingly, the Court should drop Defendant as a party to this action and vacate the Court's Order Granting Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference and Plaintiff's third party subpoena as to Defendant.  Defendant also requests that the Court expeditiously decide Defendant's motion, and, if Defendant's Motion to Sever is denied, that the Court certify its order denying Defendant's motion for immediate appeal.  *See* 28 U.S.C. § 1292(b).

### III.  CONCLUSION.

For all of the foregoing reasons, this Court should grant Defendant's Motion to Sever and the relief requested herein.

**WHEREFORE,** Defendant Bermon Pritt, formerly known as John Doe #10, respectfully moves this Court to enter an order granting Defendant's Motion to Sever, and dropping Defendant as a party from this lawsuit, and vacating the Court's Order Granting Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference and Plaintiff's third party subpoena as to Defendant, and if the Court denies Defendant's Motion to Sever, that the Court certify its order denying Defendant's motion for immediate appeal; and for all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Bermon Pritt*

### CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties by operation of the Court's electronic filing system.

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry